UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:11-CV-34-KSF

LENCO EXCAVATION, INC.
EMPLOYEE BENEFIT PLAN                                                                      PLAINTIFF

vs.                                            **OPINION AND ORDER**

DARRELL MILLER                                                                              DEFENDANT

      This matter is before the Court on the motion for summary judgment filed by Plaintiff, Lenco Excavation, Inc. Employee Benefit Plan ("Plaintiff") [DE #29] and the motion to dismiss filed by Defendant, Darrell Miller ("Miller") [DE #34]. This matter has been briefed by the parties and is ripe for review.

**I.     BACKGROUND**

      Miller was injured in an auto-pedestrian collision that occurred on April 16, 2007. Through his employment with Lenco Excavation, Inc. ("Lenco"), he was a beneficiary of Lenco's self-funded employee benefit plan (the "Plan"). Miller states that he does not recall ever seeing or signing up for the Plan and disputes the authenticity of his signature on a September 28, 2006 document entitled "Employee Enrollment Change Form" [DE #33, 34]. Miller states that, although he was generally aware that there was some type of health insurance that was being provided by Lenco, he was not aware of any of the specific terms or provisions of the Plan until the fall of 2007 [*Id*.]. Miller also states that, over four months after his accident, he and his wife were asked to sign a "Subrogation and Reimbursement Agreement," but that he was not represented by counsel at the time the agreement was presented to him and that he understood that this form was for the purpose of

continuation of his medical insurance coverage [*Id*.]. Regardless, Miller does not dispute that, as a result of the injuries received in the accident, the Plan extended medical benefits in the amount of $96,675.38 on Miller's behalf [DE #29].

Thereafter, Miller settled his claim with the insurer for the owner and driver of the vehicle that had struck him for the amount of $25,000 [DE #33, 34]. In addition, Miller recovered $100,000 in settlement proceeds from his own underinsured motorists' carrier as a result of the accident [*Id*.]. Plaintiff requested reimbursement for the medical benefits paid to Miller, but Miller refused to turn over any of the settlement proceeds to Plaintiff [DE #29].

Plaintiff brings this action for an equitable lien or constructive trust over a portion of the settlement proceeds so it may be repaid. The Plan documents provide in part:

**Right of Subrogation and Refund**

When this provision applies. The Covered Person may incur medical or dental charges due to Injuries which may be caused by the act or omission of a Third Party or a Third Party may be responsible for payment. In such circumstances, the Covered Person may have a claim against that Third Party, or insurer, including any uninsured or underinsured motorist carrier, for payment of the medical or dental charges. If the Covered Person has made, or in the future may make, a recovery, against any Third Party or insurer, the Plan will not cover either the reasonable value of the services to treat such an injury or illness or the treatment of such an injury or illness. These benefits are specifically excluded. Accepting advancement of benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer. This Subrogation right allows the Plan to pursue any claim which the Covered Person has against any Third Party, or insurer, whether or not the Covered Person chooses to pursue that claim. The Plan may make a claim directly against the Third Party or insurer, but in any event, the Plan has a lien on any amount Recovered by the Covered Person whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.

...

> The Covered Person:
>
> > (1) automatically assigns to the Plan his or her rights against any Third Party or insurer when this provision applies; and
> >
> > (2) must repay to the Plan the benefits paid on his or her behalf out of the Recovery made from the Third Party or insurer.
>
> Amount subject to Subrogation or Refund. The Covered Person agrees to recognize the Plan's right to Subrogation and reimbursement. These rights provide the Plan with a [sic] 100% of the eligible expenses, first dollar priority over any and all Recoveries and funds paid by a Third Party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses, and regardless of whether the Covered Person receives a full or partial recovery. Accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any and all rights the Covered Person may have to recover payments from any Responsible Third Party. Further, accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan the Covered Person's Third Party Claims.
>
> ...
>
> Also, the Plan's right to Subrogation still applies if the Recovery received by the Covered Person is less than the claimed damage, and, as a result, the claimant is not made whole.

[DE #29-4]. In Plaintiff's motion for summary judgment, Plaintiff claims that this Plan language and 29 U.S.C. § 1132(a)(3) entitle it to a constructive trust or equitable lien over the settlement proceeds received by Miller.

Miller opposes Plaintiff's summary judgment and moves for dismissal of Plaintiff's claim. In response to Plaintiff's motion for summary judgment, Miller argues that Plaintiff's failure to comply with the disclosure provisions of the federal Employment Retirement Income Security Act ("ERISA") precludes Plaintiff from asserting its claims in this lawsuit. In addition, Miller argues that Plaintiff is not the real party in interest in this case, and, accordingly, Plaintiff's claim should be dismissed. Miller further argues that, under Kentucky's "collateral source" doctrine, Plaintiff

does not have the right to recover any portion of the insurance benefits recovered by Miller from his underinsured motorists' policy.

## II. ANALYSIS

### A. Standard

Although Miller's motion to dismiss was filed in response to Plaintiff's motion for summary judgment, in the interest of judicial economy, the Court will address Miller's motion first. In his motion to dismiss, Miller relies upon several matters outside the pleadings, including Plaintiff's discovery responses regarding its payments to Miller and the stop-loss insurance coverage provided to Plaintiff through an insurance policy with HCC Life Insurance Company ("HCC Life"), as well as documents produced in discovery reflecting payments made by HCC Life to Plaintiff. Plaintiff has also addressed these matters in its response to Miller's motion and this Court will consider them in ruling on the motion to dismiss. Accordingly, Miller's motion to dismiss is treated as a motion for summary judgment. Fed. R. Civ. P. 12(d).

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most

favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment. *Id.* at 343. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

  **B.**  **Whether Plaintiff is the Real Party in Interest**

In his motion, Miller argues that Plaintiff has failed to bring this action in the name of the real party in interest and that, accordingly, Plaintiff's claim should be dismissed under Fed. R. Civ. Pro. 17. According to Miller, the real party in interest in this case is Plaintiff's stop-loss insurer, HCC Life, who Miller argues is a necessary party under Fed. R. Civ. Pro. 19. Plaintiff does not dispute that Lenco and HCC Life entered into an insurance agreement for stop-loss coverage. In discovery, Plaintiff has acknowledged that HCC Life paid a total of at least $88,942.47 to Plaintiff on account of the medical benefits that Plaintiff paid to Miller. Miller argues that, as a result, HCC Life, not Plaintiff, is a necessary party and the real party in interest.

Miller relies on *United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 381-82 (1949) for the proposition that both the insurer and insured are real parties in interest and necessary parties in cases of partial subrogation. According to Miller, if the insurer pays the entire loss suffered by an

5

insured, the insurer is the only real party in interest that may pursue the lawsuit. In *Aetna*, the United States Supreme Court held that, under the Federal Tort Claims Act, an insurance company may bring suit in its own name against the United States upon a claim to which it has become subrogated by payment to an insured who would have been able to bring such an action. *Id*. at 367-68, 380-81 ("If the subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name. If it has paid only part of the loss, both the insured and insurer (and other insurers, if any, who have also paid portions of the loss) have substantive rights against the tortfeasor which qualify them as real parties in interest.")(citations omitted).

However, Miller overlooks that the claim at issue in this case is a claim for reimbursement, not subrogation. Neither *Aetna* nor the other authorities cited by Miller speak to the identity of the real party in interest in the reimbursement context. Indeed, there are important differences between subrogation and reimbursement. "While subrogation and reimbursement are similar in their effect, they are different doctrines. With subrogation, the insurer stands in the shoes of the insured. With reimbursement, the insurer has a direct right of repayment against the insured. As a matter of logic and case law, a party can have one right, but not the other." *Provident Life and Acc. Ins. Co. v. Williams*, 858 F.Supp. 907, 911 (W.D.Ark. 1994). *See also Unisys Medical Plan v. Timm*, 98 F.3d 971, 973 (7th Cir. 1996)( "Unlike subrogation, which arises under state law and allows the insurer to stand in the shoes of its insured, reimbursement is a contractual right governed by ERISA and comes into play only *after* a plan member has received personal injury compensation. While subrogation and reimbursement may have similar effects, they are distinct doctrines.")(emphasis in original).

Here, the checks attached by Miller in support of his motion to dismiss show that HCC Life issued payments to Lenco, not Miller [DE #33-13]. Under the terms of the stop-loss policy, HCC

6

Life may have a right to reimbursement from Lenco. However, it does not have the right to seek reimbursement from Miller directly because it has not paid any benefits to Miller. Indeed, the stop-loss policy itself specifies that it is a reimbursement policy and that Lenco or the Plan supervisor, not HCC Life, are responsible for making benefit determinations under the Plan [*Id.*]. Thus, unlike in *Aetna*, this is not a situation where HCC Life is claiming or could claim a right to reimbursement from Miller for benefits it has paid to Miller, as HCC Life has not paid *any* benefits to Miller.

Also relevant to an analysis of Miller's claim is the fact that the insurance policy at issue here is a policy providing stop-loss coverage to a self-funded employee benefit plan, which is different from the conventional insured-insurer relationship. As an initial matter, the purchase of "stop-loss" insurance does not convert a self-funded plan into an insured plan. *Lincoln Mut. Casualty Co. v. Lectrong Products, Inc. Employee Health Ben.* Plan, 970 F.2d 206, 210 (6th Cir. 1992). *See also Citizens Ins. Co. of America v. American Medical Security, Inc.*, 92 F.Supp.2d 663, (W.D.Mich. 2000). The Fourth Circuit Court of Appeals has offered the following instructive explanation of the use of stop-loss insurance by self-funded plans:

> Stop-loss insurance provides coverage to self-funded plans above a certain level of risk absorbed by the plan. It provides protection to the plan, not to the plan's participants or beneficiaries, against benefits payments over the specified level, called the "attachment point." Attachment points may be "specific" or "aggregate." Specific attachment points define the level of benefits paid to individual beneficiaries beyond which the insurance company will indemnify the plan. Aggregate attachment points define the total amount of benefits paid to all participants or beneficiaries beyond which the insurance company will indemnify the plan. Stop-loss insurance is thus akin to "reinsurance" in that it provides reimbursement to a plan after the plan makes benefit payments.

*American Medical Security, Inc. v. Bartlett*, 111 F.3d 358, 361-62 (4th Cir. 1997)(citations omitted).

Later, the Court further explained:

> Under a self-funded plan, the employer who promises the benefit incurs the liability defined by the plan's terms. That liability remains the employer's even if it has

7

> purchased stop-loss insurance and even if the stop-loss insurer becomes insolvent. Conversely, if the employer becomes insolvent, the solvency of the stop-loss insurer may not benefit plan participants and beneficiaries. This is because their claims against the insurer would be derivative of the plan's claim against the insurer, which arises only after the plan actually makes benefit payments beyond the agreed attachment point. In contrast, when a plan buys health insurance for participants and beneficiaries, the plan participants and beneficiaries have a legal claim directly against the insurance company, thereby securing the benefits even in the event of the plan's insolvency. Participants and beneficiaries in self-funded plans may not have the security of the insurance company's assets because stop-loss insurance insures the plan and not the participants.

*Id*. at 364. Thus, despite the fact that Plaintiff may be reimbursed by its stop-loss insurer, HCC Life, for payments made by Plaintiff to its plan participants, ultimate liability to plan participants remains with Plaintiff, not HCC Life.

Regardless, under the terms of the Plan, Plaintiff, not HCC Life, has the right to seek reimbursement for the benefits that Plaintiff issued to Miller. Thus, Plaintiff, not HCC Life, is the real party in interest in this case. Accordingly, this portion of Miller's motion will be denied.

    **C.**    **Applicability of the "Collateral Source" Doctrine**

Miller next argues that, under the "collateral source" doctrine, Plaintiff does not have an interest or a right to recover the proceeds of Miller's underinsured motorist policy, as these proceeds qualify as "collateral source" payments. Under Kentucky law, "[t]he collateral source rule provides that benefits received by an injured party for his injuries *from a source wholly independent of, and collateral to, the tortfeasor* will not be deducted from or diminish the damages otherwise recoverable *from the tortfeasor*." *Schwartz v. Hasty*, 175 S.W.3d 621, 626 (Ky. Ct. App. 2005)(citations omitted)(emphasis added). As explained by the Court in *Schwartz*,

> Various justifications have been presented in support of the rule. First, the wrongdoer should not receive a benefit by being relieved of payment for damages because the injured party had the foresight to obtain insurance. *See Taylor v. Jennison*, 335 S.W.2d 902, 903 (Ky. 1960); *O'Bryan v. Hedgespeth*, 892 S.W.2d 571, 576 (Ky.1995). Second, as between the injured party and the tortfeasor, any so-called

8

>windfall by allowing a double recovery should accrue to the less culpable injured party rather than relieving the tortfeasor of full responsibility for his wrongdoing. *See Johnson v. Beane*, 541 Pa. 449, 664 A.2d 96, 100 (1995); *Bozeman v. State*, 879 So.2d 692, 703 (La.2004); 22 Am.Jur.2d Damages § 392 (2003). Third, unless the tortfeasor is required to pay the full extent of the damages caused, the deterrent purposes of tort liability will be undermined. *See* Restatement (Second) of Torts § 901(c)(1979); *Ellsworth v. Schelbrock*, 235 Wis.2d 678, 611 N.W.2d 764, 767 (2000).

*Id*.

However, in this case, Plaintiff is not a tortfeasor. Thus, while the collateral source doctrine may have relevance in determining the extent of the liability of the owner and driver of the vehicle that struck Miller, Miller cites to no authority that applies the doctrine in the context of an ERISA plan seeking reimbursement for the payment of benefits to a plan participant or beneficiary. Indeed, none of the justifications of the collateral source rule apply in such a scenario. As between Miller and Plaintiff, there are no wrongdoers, injured parties or tortfeasors. Rather, Miller is a Plan participant of an employee benefit plan that clearly provided for the Plan's right to the reimbursement of benefits paid when the participant also recovers from a third party, including under an underinsured motorist plan [DE #29-4 ("This right of Refund also applies when a Covered Person Recovers under an uninsured or underinsured motorist plan (which will be treated as Third Party coverage when reimbursement or Subrogation is in order), homeowner's plan, renter's plan, medical malpractice plan or any liability plan.")]. Simply put, the collateral source doctrine does not apply in these circumstances. Accordingly, this portion of Miller's motion will be denied.

### D.     Plaintiff's Motion for Summary Judgment

In its motion for summary judgment, Plaintiff claims that reimbursement provisions of the Plan, as well as 29 U.S.C. § 1132(a)(3), entitle it to a constructive trust or equitable lien over the third-party settlement proceeds received by Miller. In response, Miller argues that he cannot be

bound by the obligations of the Plan, including the obligation to reimburse the Plan out of the settlement proceeds he received from third parties, because Plaintiff failed to provide him with a Summary Plan Description of the Plan within 90 days of his being joined to the plan, as is required by 29 U.S.C. § 1021(a)(1) and 29 U.S.C. § 1024(b)(1). According to Miller, the document produced by Plaintiff that Plaintiff claims to be part of the documents that were presented to Miller at the time of his alleged enrollment in the Plan do not bear his true signature, but merely a forged signature of which he was unaware until this litigation. He argues that Plaintiff has failed to produce a signed receipt or any other type of purported written confirmation that he was given a Summary Plan Description as required by statute. He also states that he was unaware of the existence of the Plan or his purported enrollment in the Plan up until well after the accident and "well after the payment of many of the benefits in question."

However, even if Miller is correct that Plaintiff failed to comply with ERISA's disclosure requirements, Miller fails to cite the Court to any authority that permits a plan participant to accept benefits under a plan while avoiding compliance with a plan's requirements because the plan allegedly failed to comply with ERISA's disclosure requirements. Although Miller disputes when he became "aware" of the Plan, he never disputes that he accepted the benefits offered to him under the Plan. As explained by the Sixth Circuit in *Lewandowski v. Occidental Chemical Corporation*, 986 F.2d 1006, 1008 (6th Cir. 1993), ERISA's civil remedy enforcement scheme is found in 19 U.S.C. § 1132. This section "allows plan participants or beneficiaries to pursue various claims under the statute, including actions to recover benefits due under a plan (§ 1132(a)(1)(B)) or for equitable relief following ERISA violations (§ 1132(a)(3))." *Id*. Most relevant here, § 1132(c) empowers a court to impose various civil penalties for the failure to comply with ERISA's disclosure requirements, including those that Miller claims were violated here. However, Miller is not seeking

a civil penalty; rather, he seeks to accept the Plan's benefits while avoiding the Plan's reimbursement requirements. As noted by the Sixth Circuit, nothing in § 1132(c), "or § 1132 as a whole, suggests that ERISA would approve of an affirmative damage recovery based merely on a plan administrator's failure to adhere to proper notification and disclosure provisions." *Id*. Similarly, nothing in § 1132 suggests that a plan's failure to comply with ERISA's disclosure provisions gives rise to the right of a plan participant to simultaneously accept benefits from the plan while avoiding the plan's reimbursement requirements. Indeed, Miller cites to no authority permitting for such a windfall.

For these reasons, even assuming that Miller is correct regarding Plaintiff's failure to comply with ERISA's disclosure requirements, Miller fails to raise a genuine issue of material fact sufficient to defeat Plaintiff's motion for summary judgment. In addition, although Miller vaguely accuses Plaintiff of being "evasive" regarding the stop-loss policy with HCC Life and the payments made by HCC Life, as well as the nature of the relationship between Plaintiff and HCC Life, Miller fails to identify any particular aspects of the "relationship" about which Plaintiff has been evasive. Indeed, Plaintiff has evidently produced both the policy, as well as the checks evidencing the payments made under the policy by HCC Life to Lenco Excavation, Inc. Moreover, the Court notes that Miller has not sought relief from the Court on the grounds that Plaintiff's discovery responses, particularly any responses to requests regarding the relationship between Plaintiff and HCC Life, have been inadequate. Thus, Miller's vague accusations are insufficient to create a genuine issue of material fact sufficient to defeat Plaintiff's motion for summary judgment. For all of these reasons, Plaintiff's motion for summary judgment will be granted.

For all of the foregoing reasons, the Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS** as follows:

A. Miller's motion to dismiss [DE #34] is converted to a motion for summary judgment and is **DENIED**;

B. Plaintiff's motion for summary judgment [DE #29] is **GRANTED**;

C. A constructive trust or equitable lien, not to exceed $96,675.38, shall be imposed in favor of the Plaintiff, Lenco Excavation, Inc. Employee Benefit Plan, on settlement proceeds received by the Defendant, Darrell Miller, as a result of the injuries he sustained in an auto-pedestrian accident occurring on April 16, 2007;

D. Judgment consistent with this Opinion and Order shall be entered contemporaneously herewith;

E. this is a final and appealable order and no just cause for delay exist; and

F. this matter is **STRICKEN** from the active docket of this Court.

This July 11, 2012.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge